**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| DEEPAK SHARMA et al. | CIVIL ACTION |
|---|---|
| v. | NO. 22-826 |
| SANTANDER BANK, N.A. | |

<u>**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**</u>

**Baylson, J.**                                                                                           **June 28, 2022**

Defendant Santander Bank, N.A. has filed a Motion to Dismiss and Strike the Complaint of Plaintiffs Deepak Sharma and Padmini Sharma.  Plaintiffs allege three claims against Defendant: (I) breach of contract, (II) breach of implied warranty, and (III) negligent infliction of emotional distress.  Defendant seeks dismissal of the breach of implied warranty and negligent infliction of emotional distress claims (Counts II and III) pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant also seeks to strike Plaintiffs' jury demand under Federal Rule of Civil Procedure 12(f).  For the following reasons, Defendant's Motion is granted as to dismissal of Counts II and III without prejudice and is denied as to striking the jury demand.

**I.    Alleged Facts**

Based on the allegations in Plaintiffs' Complaint, which this Court must accept as true for purposes of Defendant's Motion, the relevant facts are as follows:

In October 2014, Plaintiffs, husband and wife, contracted with Defendant to rent and/or lease a safe deposit box, numbered #A133, at its location on 1645 Big Oak Road in Yardley, Pennsylvania.  <u>See</u> Compl. (ECF 1) ¶¶ 4-5.  Plaintiffs used this safe deposit box to store family heirlooms and jewelry, <u>see</u> <u>id.</u> at ¶ 6, and, over the course of approximately seven years, accessed the box at least ten to fourteen times a year, <u>id.</u> ¶ 7.  On September 11, 2021, Plaintiffs attempted

to access their unit, but the keys did not work.  See id. at ¶ 8.  Plaintiffs immediately notified Defendant, who was unable to explain why the keys did not work.  See id. at ¶ 9.  On September 13, 2021, Defendant notified Plaintiffs that its records indicated that Plaintiffs were assigned unit #B133, and that #A133 had been "drilled" and its contents relocated to Defendant's corporate office.  Id. at ¶¶ 10-11.  Defendant requested that Plaintiffs provide it with an inventory of unit #A133's contents, which they did, see id. at ¶ 12, and, approximately two weeks later, the contents of unit #A133 were sent back to Defendant's Yardley branch, id. at ¶ 13.  Upon examination of the returned contents, Plaintiffs notified Defendant that several items stored in their unit were missing or damaged.  See id. at ¶¶ 14-15.

On February 1, 2022, Plaintiffs brought an action against Defendant in the Pennsylvania Court of Common Pleas, Bucks County.  Defendant removed the action to this Court on March 4, 2022.  See Notice of Removal (ECF 1).  Defendant filed the instant motion on March 25, 2022.  See Mot. (ECF 7).  Plaintiffs responded on April 22, 2022, see Resp. (ECF 10), and Defendant filed a reply on April 28, 2022, see Reply (ECF 11).  Defendant has not moved to dismiss Count I, which alleges that Defendant's conduct constituted a breach of the contract for rental and/or lease of the safe deposit box.

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading "contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal quotations omitted).  In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir.2002)).  A complaint

must "set out 'sufficient factual matter' to show that the claim is facially plausible." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  Importantly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) challenge.  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678).

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are generally disfavored, and the Court has "considerable discretion" in deciding a motion to strike under Rule 12(f).  <u>DeLa Cruz v. Piccari Press</u>, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (Pratter, J.).

## III.    Discussion

### A.   Motion to Dismiss Pursuant to Rule 12(b)(6)

#### 1.   Breach of Implied Warranty

Plaintiffs allege that "[t]he safe deposit box contract included an implied warranty that Defendant would carry out its obligations under the storage contract in a professional, competent manner," Compl. ¶ 23, and Defendant breached this implied warranty by failing to (1) "hire or contract with persons who were experienced and/or competent to carry out the requirements of the storage contract"; (2) "exercise proper care in handling the Plaintiffs' items"; (3) "use proper care in transporting the Plaintiffs' personal items from unit #A133 to the Defendants' corporate offices"; (4) "use adequate care to protect against damage in transporting the [Plaintiffs'] personal items"; and (5) "supervise the Defendant's employees during the performance of the storage contract," <u>id.</u> at ¶ 24.  Defendant argues that Plaintiffs' breach of implied warranty claim is not viable on the grounds that (1) Plaintiffs' claim is no more than a claim for breach of the covenant of good faith and fair dealing, which is subsumed in Plaintiffs' breach of contract claim and cannot be maintained as an independent claim, and (2) to the extent Plaintiffs' claim hinges on a breach

of the implied warranty of fitness for a particular purpose, it fails because Pennsylvania courts have "routinely refused to recognize implied warranties in the absence of a sale of goods." Mot. 4-7. Plaintiffs counter that they have set forth sufficient facts to survive a Rule 12(b)(6) challenge, in that Defendant's alleged loss of and damage to Plaintiffs' personal possessions "are sufficient to establish that Defendant[] did not perform [its] duties in good faith and fair dealing, especially since Plaintiffs were not made aware of the movement of their items." Resp. 4-5. Plaintiffs further contend that dismissing this claim, in the absence of further discovery, would be a denial of due process. Id. at 5.

Under Pennsylvania law, "service contracts—not just contracts for the sale of goods—may include implied warranties of fitness for an intended purpose or of merchantability." Expotech Eng'g, Inc. v. Cardone Indus., Inc., No. 19-1673, 2020 WL 1694543, at *8 (E.D. Pa. Apr. 7, 2020) (Beetlestone, J.) (quoting Delaware, Lackawaxen and Stourbridge R.R. Co. v. Star Trak, Inc., No. 18-0480, 2018 WL 5296292, at *4 (M.D. Pa. Oct. 25, 2018) (citing Hoffman v. Misericordia Hosp. of Phila., 267 A.2d 867, 870-71 (Pa. 1970))). Similarly, "Pennsylvania federal and state courts have previously recognized on several occasions that all service contracts . . . may include an implied warranty that services will be performed in a reasonable and workmanlike manner." Star Trak, 2018 WL 5296292, at *3 (compiling cases). However, Plaintiffs have failed to indicate the nature of the implied warranty that they alleged Defendant breached. For this reason, Plaintiffs' breach of implied warranty claim is dismissed without prejudice with leave to amend.[1]

---

[1]    In their Response, Plaintiffs suggest that their breach of implied warranty claim hinges on whether Defendant performed its duties in good faith and fair dealing. See Resp. 5. However, under Pennsylvania law, "there is no implied covenant of good faith and fair dealing claim separate from a breach of contract claim." Cummings v. Allstate Ins. Co., 832 F. Supp. 2d 469, 473-74 (E.D. Pa. 2011) (Kelly, J.) (citing Zaloga v. Provident Life and Acc. Ins. Co. of Am., 671 F. Supp. 2d 623 (M.D. Pa. 2009)); see also Birth Ctr. v. St. Paul Cos., Inc., 787 A.2d 376, 385-86 (Pa. 2001).

### 2.   Negligent Infliction of Emotional Distress ("NIED")

Plaintiffs bring their NIED claim on the ground that Defendant "knew or should have known that the personal items stored in the Defendant's unit were valuable personal property" and "that the Plaintiffs were under serious emotional stress in connection with the unauthorized relocation of their personal items."  Compl. ¶¶ 27-28.  Defendant argues for dismissal of this claim because Plaintiffs have failed to allege any facts in support of (1) the three traditional theories for establishing NIED, see Mot. 7 (citing Perloff v. Transamerica Life Ins. Co., 393 F. Supp. 3d 404, 410 (E.D. Pa. 2019) (Rufe, J.)), or (2) a "special relationship" existing between themselves and Defendant that may support liability based on "an implied duty to care for [Plaintiffs'] emotional well-being," see id. (quoting Toney v. Chester Cnty. Hosp., 36 A.3d 83, 92, 96 (Pa. 2011) (per curiam opinion in support of affirmance)); see also Reply 2-3.

"The Pennsylvania Supreme Court has recognized three types of NIED claims."  Hershman v. Muhlenberg Coll., 17 F. Supp. 3d 454, 459 (E.D. Pa. 2014) (Stengel, J.) ("A plaintiff can recover for NIED when . . . plaintiff suffers a physical injury which causes the emotional distress, . . . plaintiff did not suffer a personal impact but was in the zone of danger, . . . or . . . plaintiff witnesses an accident causing serious injury to a close family member.") (internal citations omitted).  Several intermediate Pennsylvania courts have relied on the Pennsylvania Supreme Court's decision in Toney to recognize a claim of NIED arising "from a breach of a duty in a special relationship 'where it is foreseeable that [such a breach] would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.'"  Perloff, 393 F. Supp. 3d at 410 (quoting Toney, 36 A.3d at 84).  Although Toney has no precedential value, see Okane v. Tropicana Ent., Inc., No. 12-6707, 2013 WL 56088, at *2, n.5 (E.D. Pa. Jan. 3, 2013) (Sánchez, J.), and there is no exhaustive list as to what qualifies as a "special relationship," courts applying

this fourth theory of liability have generally limited it to "preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach," such that they "encompass an implied duty to care for the plaintiff's emotional well-being." Hershman, 17 F. Supp. 3d at 459-60 (citing Toney, 36 A.3d at 95) (noting that the Toney Court's discussion of the "special relationship" theory was "narrow," and declining to extend this theory to the relationship between a college and its students because, inter alia, a survey of Pennsylvania intermediate and trial court decisions suggests that "[t]hese courts have allowed special relationship NIED claims only between doctors and patients and an adoption agency and adoptee parents"); see Perloff, 393 F. Supp. 3d at 410-11 (noting the relationship between a "decedent's family and a funeral home" may qualify as a "special relationship").

Plaintiffs—seemingly conceding that their NIED theory relies on the "special relationship" theory, as opposed to the traditional theories of liability—counter that "it was foreseeable that a breach of Defendant's duty to ensure the safety of an individual's personal items—in a safe deposit box—would cause emotional harm to the Plaintiffs," and thus they have alleged sufficient facts to show that the relationship between Plaintiffs and Defendant "encompass[ed] an implied duty to care for [Plaintiffs'] emotional well-being." Resp. 5-6. In other words, Plaintiffs request that the Court finds the existence of a "special relationship" between a bank and a family leasing a safety deposit box at one of the bank's locations. The Court declines to do so on the facts alleged. Even if it is an actionable theory under Pennsylvania law, Plaintiffs have failed to allege any facts suggesting that Defendant was aware of the contents of Plaintiffs' safe deposit box prior to the box's alleged relocation and loss/destruction of its contents. See Compl. ¶ 12 (alleging that, subsequent to Defendant notifying Plaintiffs that the box was relocated, Defendant requested that Plaintiffs provide it with an inventory of the box's contents); Lamb v. CVS Health, No. 21-638,

2022 WL 541611, at *1, 3 (E.D. Pa. Feb. 23, 2022) (Jones, J.) (dismissing NIED claim based on "special relationship" theory on the ground that plaintiff failed to plead facts suggesting that defendant drug store was aware that video tapes provided to it by plaintiff for conversion into digital versatile discs contained thirty years' worth of family memories, and therefore the patron-drug store relationship was no more than "a traditional relationship between a business and its customer and, accordingly, . . . not the type of special relationship required for NIED"). Certainly, a bank's loss or damage of a customer's valuable personal property, as alleged here, may result in the customer's emotional distress. But, without any facts to suggest Defendant's knew, prior to the alleged loss and damage of the box's contents, that it was used to store family heirlooms and jewelry, Plaintiffs have failed to allege the existence of a "special relationship." See Lamb, 2022 WL 541611, at *3; Perloff, 393 F. Supp. 3d at 410 (quoting Toney, 36 A.3d at 84). Therefore, the Court will grant the motion to dismiss Plaintiffs' NIED claim without prejudice with leave to amend.

### B.   Motion to Strike Pursuant to Rule 12(f)

Defendant moves to strike Plaintiffs' jury demand because "Plaintiffs knowingly and voluntarily entered into the Agreement which contained an enforceable jury trial waiver provision." Mot. 14. Plaintiffs respond that they "had no real bargaining power to alter the contract or any terms that the Defendant provides to every customer." Resp. 7.

The right to a jury trial, included in the Seventh Amendment, is "a federal question controlled by federal law." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d. Cir. 2007). "Because the 'right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.'" Id. (quoting Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937)). Federal law, however, permits a private litigant to "waive the right to a jury trial in a civil case."

Id.  A jury waiver is considered valid if it is "made knowingly and voluntarily based on the facts of the case." Id.  "A waiver is knowing, voluntary and intelligent when the facts show that (1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous." First Union Nat'l Bank v. United States, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (Joyner, J.); see also Tracinda Corp., 502 F. 2d at 221-22; Bessemer Sys. Fed. Credit Union v. Fiserv. Sols., LLC, 472 F. Supp. 3d 142, 181-82 (W.D. Pa. 2020).

The first three factors weigh in favor of Plaintiffs.

In terms of the first factor—gross disparity in bargaining powers between the parties—Defendant claims Plaintiffs "were under no compulsion to lease the safe deposit box." Mot. 11. Plaintiffs respond that they did not have any "real bargaining power to alter the contract or any terms that Defendants provides to every customer." See Resp. 7.  Defendant points to Baylis v. Wachovia Bank, N.A., No. 08-3392, 2008 WL 5055746 (E.D. Pa. Sept. 4, 2001) (Sánchez, J.) to argue that Plaintiffs "certainly could have decided to forgo obtaining [Defendant's] services" if they objected to the terms of the contract with Defendants. See Mot. 11 (quoting Baylis, 2008 WL 5055746, at *3).  Although Defendant is correct that Plaintiffs could have opted to not lease a safe deposit box from Defendant, that argument is not conclusive as to the analysis of the parties' bargaining powers.  The decision in Baylis concerned a motion to compel arbitration where the contract at issue included an arbitration clause built into the jury waiver provision.  See Baylis, 2008 WL 5055746, at *3.  Here, there is no arbitration clause built into the waiver provision.  See Mot. Ex. A; cf. First Union, 165 F. Supp. 2d at 662, 665 (finding a jury trial waiver provision, that

did not include an arbitration clause, to be unenforceable because of a gross disparity in bargaining power between the parties, even though both parties were businesses).

Defendant argues that the second factor—the sophistication of the parties—weighs in its favor because Plaintiffs failed to allege any facts suggesting that they were not capable of reading and understanding the jury trial waiver.  See Mot. 12 (citing Gurfein v. Sovereign Grp., 826 F. Supp. 890 (E.D. Pa. 1993) (Pollak, J.) (finding plaintiffs, a group of individuals investing in security interests, contractually waived the right to a jury trial where, inter alia, "nothing in the first amended complaint suggest[ed] that plaintiffs were not sufficiently sophisticated to understand the waiver provisions") and Bishop v. GNC Franchising, LLC, No. 05-827, 2006 WL 2266251, at *1-2 (W.D. Pa. Jan. 13, 2006) (same, where Plaintiffs included two individual franchise owners and a corporation); Reply 4-5.  However, Gurfein and Bishop are factually distinctive from the instant action.  Here, Plaintiffs contracted, in their individual capacity, with Defendant to rent and/or lease safe deposit box; this is not a contract between businesses, or a contract involving investors or franchise owners.  Additionally, "[t]he burden of proving that a waiver was done both knowingly and intelligently falls upon the party seeking enforcement of a waiver of a jury trial clause," First Union, 164 F. Supp. 2d at 663, and Defendant has not pointed to any facts suggesting that Plaintiffs were "sophisticated business entities," see Bessemer, 472 F. Supp. 3d at 181-82 (noting that proceeding with discovery may allow the Court to address the four factors more effectively).

The third factor, whether the parties had the opportunity to negotiate, cuts in Plaintiffs' favor.  Defendant argues that Plaintiffs do not allege that they sought to change the contract, or that Defendant prohibited any contractual modifications.  See Mot. 13-14; Reply 6.  Yet, given Plaintiffs' position as individuals seeking to lease a safe deposit box from at one of Defendant's

local branches, and the extreme disparity in bargaining power at the time, it is "highly unlikely that [they] had any opportunity to negotiate" the contract terms.  <u>First Union</u>, 164 F. Supp. 2d at 665; <u>see also</u> Resp. 7 (noting that there was "no opportunity . . . to negotiate the terms" of the contract).

Finally, as to the fourth factor, Defendant claims the waiver was conspicuous because it used bold text—the only bold text in the section—to identify the jury waiver section and the waiver-specific language within the section.  <u>See</u> Mot. 12-13.  Plaintiffs counter that the language in the waiver was ambiguous and should not be expected to be understood by a non-business party. <u>See</u> Resp. 8-9.  Federal courts in Pennsylvania, however, have held waivers to be conspicuous when they include language that is "set apart" and "in bold."  <u>Scott-Moncrieff v. Lost Trails, LLC</u>, No. 16-1105, 2018 WL 4110742, at *7 (M.D. Pa. Aug. 29, 2018).  Because the waiver here meets these standards, this factor cuts in favor of Defendant.

Although the fourth factor favors Defendant, the remaining three factors weigh in favor of Plaintiffs.  The Court will deny Defendant's motion to strike the jury demand without prejudice.

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion is granted as to dismissal of the breach of implied warranty claim (Count II) and the NIED claim (Count III), and is denied as to striking the jury demand.  An appropriate Order follows.